Jenna A. Shorr, Esq., #073162013
**KRUMHOLZ DILLON, PA**
**574 Summit Avenue, Suite 402**
**Jersey City, NJ 07306**
**(201) 656-5232**
**Attorneys for Plaintiff**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

VANESSA GROSS,

               Plaintiff

vs.

CITY OF JERSEY CITY, JERSEY CITY
DIVISION OF FIRE, DEPARTMENT OF
PUBLIC SAFETY, JOSEPH MENENDEZ,
in his individual and official capacities,
MARK A. PETRUCELLI, in his individual
and official capacities, STEVEN MCGILL,
in his individual and official capacities,
JAMES SHEA, in his individual and
official capacities, GEROME CALA, in his
individual and official capacities, MARK
BUNBURY, individually, JOHN DOE 1-5
(FICTITIOUSLY NAMED) AND JANE
DOE 1-5 (FICTITIOUSLY NAMED), in
their individual and official capacities,

               Defendant(s)

Case No. 2:18-cv-09802-JMV-JBC

**NOTICE OF MOTION**
**PURSUANT TO R. 12(b)(6)**

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO**
**FED. R. CIV. P. 12(b)(6)**

**KRUMHOLZ DILLON, P.A.**
**574 Summit Avenue**
**Jersey City, NJ 07306**
**(201) 656-5232**
**Attorneys for Plaintiff**

On the Brief:
JENNA A. SHORR, ESQ.

## PLAINTIFF'S BRIEF OPPOSING DEFENSE
## MOTION TO DISMISS

### Table of Contents

Table of Cases, Statutes, Rules and Other Authorities Cited................................................i

Preliminary Statement and Procedural History..............................................................1

Plaintiff's Response to Defendant's Statement of Alleged Facts.....................................2

Plaintiff's Statement of Facts.........................................................................................2

Legal Argument...............................................................................................................8

    I: Motion to Dismiss Standard.....................................................................................8

    II: Defendant's Motion to Dismiss Should be Denied As Plaintiff Has Sufficiently
    Pled A Valid CEPA Claim Against All Defendants.......................................................10

        1. Plaintiff's Reasonable Belief That Her Employer's Conduct Violated
        Either A Law, Rule, Or Regulation Promulgated Pursuant To Law, Or A
        Clear Mandate Of Public Policy.............................................................................12

        2. Plaintiff's Whistleblowing Activity.................................................................14

        3. Retaliatory or Adverse Employment Action....................................................15

        4. Causal Connection Between Protected Activity and Employer Action.............18

    III. Defendant's Motion to Dismiss Should be Denied As Plaintiff Has Sufficiently Pled
    A Valid Gender Discrimination Claim Against All Defendants........................................20

    IV. Defendant's Motion to Dismiss Should be Denied As Plaintiff Has Sufficiently
    Pled A Valid USERRA/NJLAD Discrimination Claim Against All Defendants..............22

    V. Defendant's Motion to Dismiss Should be Denied As Plaintiff Has Sufficiently
    Pled A Valid NJLAD Hostile Work Environment Claim Against All Defendants..........27

    VI. Defendant's Motion to Dismiss Should be Denied As Plaintiff Has Sufficiently
    Pled Aiding and Abetting Claims Against All Defendants................................................31

    VII . Dismissal Of Plaintiff's Complaint Against the Department of Public Safety
    And the Jersey City Division Of Fire.............................................................................34

VIII. Any Imperfection in Plaintiff's Pleading May Be Cured By Granting Leave to Amend the Complaint Any Imperfection in Plaintiffs Pleading May Be Cured By Granting Leave to Amend the Complaint..............................................................35

Conclusion.........................................................................................................................36

Certification Of Jenna A. Shorr, Esq. With Exhibits

VANESSA GROSS v. CITY OF JERSEY CITY, et al.
Case No. 2:18-cv-09802-JMV-JBC

## TABLE OF AUTHORITIES

### STATUTES CITED

38 U.S.C.A. § 4311................................................................................................................23

38 U.S.C. 4313(a)(4)............................................................................................................26

N.J.S.A. 10:5-1 *et. seq.*......................................................................................................12

 N.J.S.A. 10:5-5(a)..............................................................................................................31

N.J.S.A. 10:5-12(a)............................................................................................................31

N.J.S.A. 10:5-12(d)............................................................................................................27

N.J.S.A. 10:5-12(e)............................................................................................................31

N.J.S.A. 34:19-2e...............................................................................................................16

N.J.S.A. 34:19-3(a)-(c).......................................................................................................11

N.J.S.A. 34:19-7.................................................................................................................14

N.J.S.A. 38:23-1.................................................................................................................26

N.J. S.A. 38A:4-4................................................................................................................26

### RULES CITED

FED. R. CIV. P. 8.................................................................................................................8

FED. R. CIV. P. 12(b)(6)......................................................................................................7

FED. R. CIV. P. 15(a)..........................................................................................................35

### CASES CITED

*Abbamont v. Piscataway Tp. Bd. of Educ.,*
    138 N.J. 405, 650 A.2d 958 (1994)...................................................................................10

*Andersen v. Exxon Co., U.S.A.,*
    89 N.J. 483 (1982)............................................................................................................20

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937  (2009)......................................................................................................8

i

*Baliko v. Stecker,*
   275 N.J. Super. 182 (App. Div. 1994)................................................................................33

*Bartol v. Barrowclough,*
   251 F. Supp. 3d 855 (E.D. Pa. 2017)...............................................................................34

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007)............................................................................................................8

*Conley v. Gibson,*
   355 U.S. 41 (1957)..............................................................................................................8

*Crane v. Yurick,*
   287 F.Supp. 2d 553 (D.N.J. 2003)...................................................................................19

*Davi v. Cabana Pools, Inc.,*
   135 N.J. Super. 372 (App. Div. 1975)..............................................................................33

*DeBellis v. Kulp,*
   166 F.Supp.2d 255 (E.D.Pa.2001)...................................................................................35

*Dzwonar v. McDevitt,*
   177 N.J. 451, 828 A.2d 893 (2003)..................................................................................12

*Enriquez v. W. Jersey Health Sys.,*
   342 N.J.Super. 501, 777 A.2d 365 (App. Div.)................................................................20

*Estate of Roach v. TRW, Inc.,*
   164 N.J. 598, 754 A.2d 544 (2000)..................................................................................18

*Feldman v. Hunterdon Radiological Assocs.,*
   187 N.J. 228, 901 A.2d 322 (2006)..................................................................................11

*Fowler v. UPMC Shadyside,*
   578 F.3d 203 (3d Cir. 2009)...............................................................................................9

*Franek v. Tomahawk Lake Resort,*
   333 N.J.Super. 206, 754 A.2d 1237 (App.Div. 2000).....................................................20

*Fucilla v. Layman,*
   109 N.J. 319, 537 A.2d 652 (1988)..................................................................................20

*Godley v. Newark Police Dep't,*
   No. CIV. 05-806 (SRC), 2007 WL 269815 (D.N.J. Jan. 26, 2007)....................................35

*Gerard v. Camden County Health Services Ctr.,*
   348 N.J.Super. 516, 792 A.2d 494 (App. Div. 2002)........................................................12

*Graff v. Subbiah Cardiology Assoc., Ltd.,*
   No. 08-207, 2008 WL 2312671 (W.D. Pa. June 4, 2008)...................................................10

*Grigoletti v. Ortho Pharmaceutical Corp.,*
  118 N.J. 89, 570 A.2d 903 (1990).....................................................................................20

*Grosjean v. First Energy,*
  471 F. Supp. 878 (N.D. Ohio 2007).................................................................................24

*Higgins v. Pascack Valley Hosp.,*
  158 N.J. 404, 730 A.2d 327 (1999).................................................................................11

*Hill v. Michelin N. Am. Inc.,*
  252 F.3d 307 (4th Cir. 2001)...........................................................................................23

*Hurley v. Atlantic City Police Department,*
  174 F.3d 95 (3d Cir. 1999)...............................................................................................32

*In Re Burlington Coat Factory Sec. Litig.,*
  114 F.3d 1410 (3d Cir. 1997)...........................................................................................10

*Ivan v. County of Middlesex,*
  595 F. Supp. 2d 425 (D.N.J. 2009)..................................................................................32

*Jackson v. Concord Ins. Co.,*
  54 N.J. 113, 253 A.2d 793 (1969)....................................................................................20

*Koehler v. PepsiAmericas,*
  2006 WL 2035650 (S.D. Ohio July 18, 2006).................................................................24

*Kolb v. Burns,*
  320 N.J.Super. 467, 727 A.2d 525 (App. Div. 1999)......................................................11

*Lehmann v. Toys `R' Us.,*
  132 N.J. 587 (1993).........................................................................................................27

*Maw v. Advanced Clinical Communications, Inc.,*
  359 N.J.Super. 420, 820 A.2d 105 (App. Div. 2003)......................................................11

*Maxfield v. Cintas Corp. No. 2,*
  427 F.3d 544 (8th Cir. 2005)............................................................................................23

*Mehlman v. Mobil Oil Corp.,*
  153 N.J. 163, 707 A.2d 1000 (1998)................................................................................11

*Pahle v. Colebrookdale Twp.,*
  227 F. Supp. 2d 361 (E.D. Pa. 2002)...............................................................................35

*Passaic Daily News v. Blair,*
  63 N.J. 474 (1973)...........................................................................................................20

*Pension Benefit Guar. Corp. v. White Consol. Indus.,*
  998 F.2d 1192 (3d Cir. 1993)...........................................................................................9

*Peper v. Princeton Univ.*,
  77 N.J. 55, 389 A.2d 465 (1978).........................................................................................21

*Phillips v. County of Allegheny*,
  515 F.3d 224 (3d Cir. 2008)..................................................................................................9

*Powell v. Ridge*,
  189 F.3d 387 (3d Cir. 1999)..................................................................................................9

*Pukowsky v. Caruso*,
  312 N.J. Super. 171 (App. Div. 1998)................................................................................20

*Scheuer v. Rhodes*,
  416 U.S. 232 (1974)............................................................................................................10

*Shane v. Fauver*,
  213 F.3d 113 (3d Cir. 2000)................................................................................................35

*Shepherd v. Hunterdon Dev. Ctr.*,
  336 N.J. Super. 395 (App. Div. 2001)................................................................................32

*Tarr v. Ciasulli's Mack Auto Mall*,
  181 N.J. 70,  853 A.2d 921 (2004)......................................................................................32

*Taylor v. Metzger*,
  152 N.J. 490 (1998).............................................................................................................27

*Thomas v. Town of Hammonton*,
  351 F.3d 103 (3d Cir. 2003)................................................................................................19

*Tynan v. Vicinage 13 of Superior Court*,
  798 A.2d 648, 351 N.J.Super. 385 (App. Div. 2002).........................................................20

*Velazquez-Garcia v. Horizon Lines of Puerto Rico, Inc.*,
  473 F.3d 11 (1st Cir. 2007).................................................................................................25

*Vickers v. City of Memphis*,
  368 F.Supp.2d 842 (W.D. Tenn.2005)................................................................................24

*Warren v. International Business Machines Corp.*,
  358 F. Supp. 2d 301 (S.D.N.Y. 2005)................................................................................24

*Zaffuto v. Wal-Mart Stores, Inc.*,
  130 Fed. Appx. 566 (3d Cir. 2005).....................................................................................18

## OTHER AUTHORITIES

NJ Model Jury Charge (Civil) 2.21 "The New Jersey Law Against Discrimination ("NJLAD")
(*N.J.S.A.* 10:5-1 *et seq.*).......................................................................................................21

## PRELIMINARY STATEMENT AND PROCEDURAL HISTORY

Plaintiff, Vanessa Gross, respectfully submits this Brief in opposition to defendants' Motion to Dismiss Plaintiff's Complaint pursuant to R. 12(b)(6) for failure to state a claim upon which relief can be granted.  Defendants' motion should be denied in its entirety.

Plaintiff filed a Complaint on April 30, 2018, against Defendants City of Jersey City, Jersey City Division of Fire, the Deputy Chief of the Arson Investigation Unit of the Jersey City Department of Fire and Emergency Services Joseph Menendez, the Captain in the Arson Investigation Unit Mark A. Petrucelli, and the Battalion Chief in the Jersey City Department of Fire and Emergency Services Steven McGill, alleging a violation of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1 *et. seq.* (First Count);  sex and/or gender discrimination in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 *et. seq.* (Second Count); a violation of The Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C.A. 4311, *et seq.* (Third Count); Hostile Work Environment in violation of the NJLAD (Fourth Count); and aiding and abetting illegal discrimination in violation of the NJLAD (Fifth Count, improperly pled as the Third Count). **(Exhibit A, Filed Complaint).**

Before a responsive pleading was filed, Plaintiff filed an Amended Complaint on May 29, 2018, adding the Director of Public Safety for the City of Jersey City James Shea, the Deputy Director of the Department of Fire and Emergency Services Gerome Cala, and the Director of Human Resources Mark Bunbury as individual defendants. **(Exhibit B, Filed First Amended Complaint and Jury Demand)**. On May 30, 2018, Defendants removed this action to the United States District Court, District of New Jersey.  (*See* ECF No.1)

-1-

On June 5, 2018, a Clerk's Text Order was entered permitting the Defendants' time to answer or otherwise reply by June 20, 2018. (*See* ECF at 6/5/2018)  By Order entered on July 2, 2018, Defendant's request for an extension to file their responsive pleading until July 12, 2018, was granted.  Defendants filed the instant motion on July 12, 2012. (*See* ECF No.9)

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF ALLEGED FACTS**

Although the instant motion was filed pursuant to FED. R. CIV. P. 12(b)(6), Defendant has included a numbered statement of facts similar to that required pursuant to a motion for summary judgment under FED. R. CIV. P. 56. Accordingly, Plaintiff responds as follows:

1. Admitted.

2. Admitted.

3. Admitted.

4. Denied that Petrucelli ordered Plaintiff to write a 489 report "three months later." Petrucelli ordered Plaintiff to write a 489 report on or about November 24, 2017, *two* months after Plaintiff complained to defendant Menendez about Petrucelli's comments made on or about September 24, 2017.

5. Admitted.

6. Admitted.

7. Admitted.

8. Admitted.

**PLAINTIFF'S STATEMENT OF FACTS**

As the instant motion was filed pursuant to FED. R. CIV. P. 12(b)(6), and *not* FED. R. CIV. P. 56, which requires a separate statement of facts, Plaintiff provides the following narrative

statement of facts: Plaintiff Vanessa Gross (hereinafter "Plaintiff" or "Gross") is a 34 year old female. (Exhibit B, First Amended Complaint and Jury Demand, at ¶ 1) On or about June 3, 2013, Plaintiff was hired as a firefighter for the City of Jersey Fire Department within the City's Department of Fire and Emergency Services.  (*Id.* at ¶ 15) Ms. Gross was then assigned to the Arson Investigation Unit on or about September 3, 2016, and she became an Investigator within the Arson Investigation Unit in 2017. (*Id.* at ¶ 17-20) Plaintiff's tour in the Arson Investigation Unit has consisted of 24 hours on duty, and 72 hours off duty. (*Id.* at ¶ 22) Plaintiff continues to be employed by the City of Jersey City.[1]

Plaintiff is also a member of the United States Army National Guard Unit which she joined in March 2003. (*Id.* at ¶ 21) Plaintiff's service in the Army National Guard requires her to participate in training. (*Id.* at ¶ 23)  Plaintiff has submitted her schedule of annual training in the New Jersey Army National Guard to her employer. (*Id.*)

At all relevant times, Individual Defendant Joseph Menendez (hereinafter "Menendez") has been employed as the Deputy Chief of the Arson Investigation Unit, working under the direction of the Fire Chief, and responsible for assisting in the management and discipline of the fire department. (*Id.* at ¶ 5; 93), Individual Defendant Mark A. Petrucelli (hereinafter "Petrucelli") has been employed as the Fire Captain in the Arson Investigation Unit, working under the direction of the Fire Chief and Deputy Chief, and in charge of the Jersey City fire department intended to assist in the extinguishment of fires, and other duties. (*Id.* at ¶ 6; 94) Individual Defendant Steven J. McGill (hereinafter "McGill") has been employed as the  Chief of

---

[1] Since the filing of the First Amended Complaint, the Arson Investigation Unit has been "officially" disbanded although some officers continue to perform work in this capacity.  Ms. Gross has been reassigned to Fire Engine 9 as a Firefighter.

the Fire Department, who is in charge of the fire department, including managing all fire

department operations.  (*Id.* at ¶ 7; 95). Individual Defendant James Shea (hereinafter "Shea")

has served as the Director of Public Safety for the City of Jersey City, and is Plaintiff's superior

officer in the chain of command. (*Id.* at ¶ 8; 96)   Individual Defendant Gerome Cala (hereinafter

"Cala") has been employed as the Deputy Director of the Department of Fire and Emergency

Services, and is also Plaintiff's superior officer in the chain of command. (*Id.* at ¶ 9; 97)

Individual Defendant Mark Bunbury (hereinafter "Bunbury")  has been employed by defendant

City of Jersey City as the Director of Human Resources.  (*Id.* at ¶ 10) Plaintiff contends that

Menendez, Petrucelli, McGill, Shea, and Cala are Plaintiff's superior officers in the chain of

command, with the authority to control the Plaintiff's workplace, set policy and procedure and

oversee the Plaintiff's work environment. (*Id.* at ¶93-97) Plaintiff also contends that Bunbury has

the authority and responsibility to implement and follow policies and procedures, and investigate

complaints of discriminatory and retaliatory conduct in the workplace. (*Id.* at ¶ 98) All individual

defendants are members of upper management with the authority to control the Plaintiff's work

place. (*Id.* at ¶ 99)

On or about September 24, 2017, defendant Petrucelli referred to Ms. Gross as a "baby

back" which is a sexist, discriminatory and derogatory term ascribed to women who complain or

cry a lot, or act like a "pussy". (*Id.* at ¶ 24) Plaintiff complained about these comments to

defendant Menendez. (*Id.* at ¶ 25) Plaintiff also complained about these comments to defendant

Petrucelli, at which time Petrucelli told Plaintiff that "females need to understand things are

different in the firehouse" or words to that effect. (*Id.* at ¶ 26)

Plaintiff's complaint about Petrucelli's comments caused a series of retaliatory actions against Plaintiff. On or about November 24, 2017, shortly after Plaintiff complained about Petrucelli's comments, Defendants retaliated against Plaintiff when she was ordered by Petrucelli to write a "489" regarding a fire to which Plaintiff had never been dispatched. (*Id.* at ¶ 29)

On or about November 28, 2017, Plaintiff complained to defendant Menendez about Petrucelli's retaliation since her complaint of discriminatory conduct. (*Id.* at ¶ 30) As a result of Plaintiff's complaints, Plaintiff has been subjected to further retaliation and a hostile work environment by Defendants, which has consisted of but is not limited to the following:

      a. Denial of training approvals and offers of training opportunities including but not limited to the Crisis Intervention Team Training, and Hazmat Training;

      b. Imposition of and order of discipline including but not limited to the completion of 489 forms, while other members of Plaintiff's unit were not subject to the same discipline;

      c. Removal of Plaintiff's gun;

      d. Refusal to grant military leave after the submission of Military Orders in a timely fashion.

      e. Transfer of Plaintiff from the Arson unit to Engine Co. 6 on the pretext Plaintiff did not have Hazmat Training when others were permitted to remain in the unit without the training;

      f. Denial of overtime unlike similarly situated arson investigators;

      g. Failure to pay overtime;

      h. Issuance of disciplinary notice issued by defendant McGill;

i.  Change in unit assignment of days scheduled to work;

j.  Denial of Plaintiff's request to go to the gun range. (*Id.* at ¶ 31)

Further, Plaintiff has not been paid for all overtime work, and she has been denied

overtime in accordance with the City's Overtime policy, which is under the control of Captain

Petrucelli and Deputy Chief Menendez. (*Id.* at ¶ 32)

On or about January 4, 2018, Captain Petrucelli commented to Plaintiff that she was

"lucky" to have unlimited leave, after she submitted military leave papers. (*Id.* at ¶ 33) Plaintiff

complained to Menendez about Petrucelli's comment  about military leave. (*Id.* at ¶ 34)

Since complaining about Petrucellis' comments regarding Plaintiff's military status,

Defendant has further retaliated against Plaintiff, including but not limited to imposing new

regulations on Plaintiff with regard to notice to be provided for military leave; failing to permit

Plaintiff to attend Hazmat Training; and disciplining Plaintiff for attending training. (*Id.* at ¶ 35)

In January 2018, Menendez ordered Plaintiff to come in a day early from her "day off"

due to military leave. (*Id.* at ¶ 35) Menendez also ordered Plaintiff to make an appointment with

Human Resources regarding her complaints against Petrucelli, at which time, Gross was

identified by Human Resources as   the one who filed a complaint against Captain Petrucelli. (*Id.*

at ¶ 37) Defendants further retaliated against Plaintiff on or about January 25, 2018, when

Plaintiff's work schedule was changed so that her work schedule in February and March had an

adverse impact on her military service. (*Id.* at ¶ 38)

On March 1, 2018, Defendants removed Plaintiff from the Arson Unit based on an

alleged change in the qualifications required of an Arson Investigator which required the

mandatory attendance at HazMat training scheduled during a period of time  which conflicted

-6-

with Plaintiff's previously submitted military service. (*Id.* at ¶ 39) Defendants then failed to

provide Plaintiff with the opportunity to take the same course as the unit took, causing Plaintiff

to be temporarily transferred back to Engine Co 6, while she waited to take the HazMat Tech

Class. (*Id.* at ¶ 40)

Plaintiff received an email requiring the units attendance at the Arson Recertification

Training held on April 13, 2018.   (*Id.* at ¶ 42) Plaintiff was directed by Menendez to write a 489

documenting Plaintiff's attendance, which was not required of other arson personnel. (*Id.*)

In April 2018, Plaintiff requested time off for military leave to defendant Petrucelli.   (*Id.*

at ¶ 67) On or about April 17, 2018, Defendant Menendez advised Plaintiff that he had been told

by McGill that they would be charging Plaintiff with conduct unbecoming a firefighter based on

Plaintiff's attendance at one JCFD mandatory training session, instead of two sessions, due to her

military training obligations. (*Id.* at ¶ 68) On or about April 18, 2018, Menendez and McGill

denied Plaintiff's request for military time off, and indicated that Plaintiff would be charged

compensatory time for said leave. (*Id.* at ¶ 70) Shortly thereafter, on or about April 19, 2018,

Defendant Menendez advised Plaintiff that the JCFD Administration decided to deny previously

approved military leave, and charge compensatory time for said leave. (*Id.* at ¶ 69-70) Then, on

or about April 23, 2018, defendant Menendez posted in the  "General Order" book, false charges

being filed against Plaintiff, which was visible to the entire department, causing Plaintiff harm,

humiliation and embarrassment. (*Id.* at ¶ 83)

On or about May 22, 2018, defendant McGill and Menendez ordered that Plaintiff be

charged "compensatory time" for any military leave taken, and incorrectly advised that the Union

contract required four (4) days notice be provided for any time off for military leave. (*Id.* at ¶ 72)

July 31, 2018

Plaintiff further contends that she has been discriminated against based on her gender. As a female firefighter, Plaintiff has been denied the opportunity to attend training programs and/or practice at the range. (*Id.* at ¶ 53) In addition, female firefighters have been denied access to the locker room, requiring them to change in an area designated for male and female firefighters. (*Id.* at ¶ 54)

Plaintiff has filed grievances with the union regarding the discriminatory conduct and made an appointment to speak with Human Resources about the hostile work environment. (*Id.* at ¶ 43-44; Exhibit C, Mar 2, 2018 Complaint to Union)   Defendants refused to permit Plaintiff to keep her appointment, although said appointment would not have interfered with Plaintiff's job duties.  (*Id.* at ¶ 44)

## **LEGAL ARGUMENT**

### **I. Motion to Dismiss Standard**

A motion to dismiss under FED. R. CIV. P. 12(b)(6) is granted only if, accepting all well-leaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, the Court finds that a plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citing Conley v. Gibson, 355 U.S. 41, 47 (1957)).  The Supreme Court further clarified this rule in holding that a plaintiff's complaint will survive a motion to dismiss if it contains sufficient factual allegations in the complaint to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).  The

-8-

plausibility standard requires that the court "draw the reasonable inference [from the complaint] that the defendant is liable for the misconduct alleged" and requires "more than a sheer possibility" of the unlawful conduct. Id. (citing Twombly, 550 U.S. at 556).

Although a court must accept as true all factual allegations in a complaint, a court need not accept legal conclusions or a "formulaic recitation of the elements of a cause of action." *Id.* (quoting Twombly, 550 U.S. at 555) ; *see also* Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). Furthermore, in evaluating this type of motion to dismiss, the Court only should consider the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents – *if* the plaintiff bases her claims on those documents. Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

When determining whether the Complaint meets the pleading requirements of FED. R. CIV. P. 8, a district court is to "draw upon its judicial experience and common sense" in making this determination, and to consider the complaint as a whole and in context. Ashcroft v. Iqbal, 129 S. Ct. at 1950. The complaint "need only set forth sufficient facts to support plausible claims," but need not be "as rich with detail as some might prefer." Fowler v. UPMC Shadyside, 578 F.3d 203, 211-212 (3d Cir. 2009) (citing Twombly, 578 F.3d at 213. "Under the Federal Rules of Civil Procedure, an evidentiary standard is not a proper measure of whether a complaint fails to state a claim." Id. (citing Powell v. Ridge, 189 F.3d 387, 394 (3d Cir. 1999) (overruled on other grounds). As the Third Circuit has recognized, "[e]ven post-Twombly, [a] plaintiff is not required to establish the elements of a prima facie case but instead, need only put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the

necessary element[s].' " Id. (citing Graff v. Subbiah Cardiology Assoc., Ltd., No. 08-207, 2008 WL 2312671 (W.D. Pa. June 4, 2008)).

Ultimately, in reviewing a complaint under FED. R. CIV. P. 12(b)(6), the Court only determines whether the plaintiff is entitled to offer evidence in support of his allegations, and not whether the plaintiff will ultimately prevail. In Re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts alleged is improbable and that a recovery is very remote and unlikely." Twombly, 550 U.S. at 556 (internal quotations omitted).

At this early stage, Plaintiff has adequately set forth allegations to support claims of retaliation in violation of the New Jersey Conscientious Employee Protection Act ("CEPA"); Sex and/or Gender Discrimination in violation of the New Jersey Law Against Discrimination (NJ LAD), N.J.S.A. 10:5-5(e); violations of The Uniformed Services Employment and Reemployment Rights Act (hereinafter "USERRA") and/or the NJLAD; Hostile work environment; and aiding abetting illegal discrimination.

## II. Defendant's Motion to Dismiss Should be Denied As Plaintiff Has Sufficiently Pled A Valid CEPA Claim Against All Defendants

The purpose of the Conscientious Employee Protection Act (CEPA) "is to protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct." Abbamont v. Piscataway Tp. Bd. of Educ., 138 N.J. 405, 431, 650 A.2d 958, 971 (1994). CEPA aims to "prevent retaliation against those employees who object to employer conduct which they reasonably believe to be

unlawful or indisputably dangerous to the public health, safety or welfare." Mehlman v. Mobil

Oil Corp., 153 N.J. 163, 193-194, 707 A.2d 1000, 1015-1016 (1998). When enacted, CEPA was

"the most far reaching 'whistleblower statute' in the nation." Mehlman, 153 N.J. at 179, 707

A.2d 1000. As a broad, remedial legislation, the statute must be construed liberally. Feldman v.

Hunterdon Radiological Assocs., 187 N.J. 228, 901 A.2d 322 (2006).

CEPA provides protection for employees: (1) who disclose or threaten to disclose

employer conduct reasonably believed to be unlawful; (2) who give testimony or provide

information to a public body investigating misconduct; or (3) who object to or refuse to

participate in an act believed to be illegal or against a clear mandate of public policy. N.J.S.A.

34:19-3(a)-(c). The statute protects employees who complain to their employer about the

misconduct of co-employees, even in the absence of employer complicity in the misconduct.

Higgins v. Pascack Valley Hosp., 158 N.J. 404, 730 A.2d 327 (1999). Under CEPA, both the

employer and the employer's employees are subject to CEPA's prohibitions. Maw v. Advanced

Clinical Communications, Inc., 359 N.J.Super. 420, 820 A.2d 105 (App. Div. 2003), judgment

rev'd, 179 N.J. 439, 846 A.2d 604 (2004).

In order to establish a CEPA claim, a plaintiff must demonstrate that: (1) she reasonably

believed that her employer's conduct was violating either a law, rule, or regulation promulgated

pursuant to law, or a clear mandate of public policy; (2) she performed a "whistle-blowing"

activity described in N.J.S.A. 34:19-3c; (3) an adverse employment action was taken against her;

and (4) a causal connection exists between the whistle-blowing activity and the adverse

employment action. Kolb v. Burns, 320 N.J.Super. 467, 476, 727 A.2d 525, 530 (App. Div.

1999).

**1.  Plaintiff's Reasonable Belief That Her Employer's Conduct Violated Either A Law, Rule, Or Regulation Promulgated Pursuant To Law, Or A Clear Mandate Of Public Policy**

A CEPA plaintiff need not show that his or her employer or another employee actually violated a law or a clear mandate of public policy. Dzwonar v. McDevitt, 177 N.J. 451, 462, 828 A.2d 893, 900 (2003). Rather, the plaintiff must only demonstrate a reasonable belief of such a violation based upon some knowledge of the existence of a statute, regulation, common law, or safety guide that would reasonably justify his or her accusation. Gerard v. Camden County Health Services Ctr., 348 N.J.Super. 516, 792 A.2d 494, 498 (App. Div. 2002). A CEPA claim only requires "facts that would support an objectively reasonable belief that a violation has occurred." Dzwonar, 177 N.J. at 464 (2003).

Here, Plaintiff claims that defendant Petrucelli referred to Ms. Gross as a "baby back" which is a sexist, discriminatory and derogatory term ascribed to women who complain or cry a lot, or act like a "pussy".  (Exhibit B at ¶ 24) When Plaintiff complained about these comments to defendant Petrucelli, Petrucelli told Plaintiff that "females need to understand things are different in the firehouse" or words to that effect. (Id. at ¶ 26)  Plaintiff claims that she had an objective reasonable belief that Petrucelli's comments were discriminatory based on Plaintiff's gender in violation of the New Jersey Law Against Discrimination (NJ LAD), N.J.S.A. 10:5-1 *et. seq.,* and the Executive Order of the City of Jersey City prohibiting unlawful discrimination and harassment based on sex or gender.

Plaintiff further claims that on or about January 4, 2018, Petrucelli commented to Plaintiff that she was "lucky" to have unlimited leave, after she submitted military leave papers. (Exhibit B at ¶ 33)  Also in January 2018, Menendez ordered Plaintiff to come in a day early

-12-

from her "day off" due to military leave, which is a violation of USERRA. (Id. at ¶ 36)  On or about January 25, 2018, Plaintiff's work schedule was changed so that her work schedule in February and March had an adverse impact on her military service.  (Id. at ¶ 38)

On March 1, 2018, Defendants removed Plaintiff from the Arson Unit based on an alleged change in the qualifications required of an Arson Investigator which required the mandatory attendance at HazMat training scheduled during a period of time  which conflicted with Plaintiff's previously submitted military service. (Id. at ¶ 39) Defendants also failed to provide Plaintiff with the opportunity to take the same course as the unit took, causing Plaintiff to be temporarily transferred Plaintiff back to Engine Co 6, while she waited to take the HazMat Tech Class, and which constitutes a failure to make reasonable efforts to help Plaintiff continue to be qualified for the position of Arson Investigator, in the Jersey City Fire Department Arson Investigation Unit, pursuant to 38 U.S.C. 4313(a)(4). (Id. at ¶ 39-41)

Defendant has further subjected Plaintiff to:

  a.  Denial of training approvals and offers of training opportunities including but not limited to the Crisis Intervention Team Training, and Hazmat Training;

  b.  Imposition of and order of discipline including but not limited to the completion of 489 forms, while other members of Plaintiff's unit were not subject to the same discipline;

  c.  Removal of Plaintiff's gun;

  d.  Refusal to grant military leave after the submission of Military Orders in a timely fashion.

  e.  Transfer of  Plaintiff from the Arson unit to Engine Co. 6 on the pretext Plaintiff did

not have Hazmat Training when others were permitted to remain in the unit without the

training;

f.  Denial of overtime unlike similarly situated arson investigators;

g.  Failure to pay overtime;

h.  Issuance of disciplinary notice issued by defendant McGill;

I.  Change in unit assignment of days scheduled to work;

j.  Denial of Plaintiff's request to go to the gun range. (Id. at ¶ 31)

Plaintiff contends that she had an objective reasonable belief that this conduct was

discriminatory based on her military status in violation of the NJ LAD, City of Jersey City

policies, and the Uniformed Services Employment and Reemployment Rights Act.  This satisfies

the first element of Plaintiff's CEPA claim.

### 2.  Plaintiff's Whistleblowing Activity

To satisfy the second element of a CEPA claim, a plaintiff must demonstrate that he or

she performed a whistleblowing activity. Dzwonar, 177 N.J. at 462. A whistleblowing activity

occurs when an employee discloses or threatens to disclose to a supervisor or to a public body an

activity or practice of the employer. N.J.S.A. 34:19-3a. A disclosure only needs to be made to a

supervisor or a public body and not both. Abbamont, 269 N.J.Super. at  28. CEPA defines the

term "supervisor" broadly to include any individual within the employer's organization who has

the authority to direct and control the work performance of the affected employee or has the

authority to take corrective action regarding the violation of the law, rule or regulation of which

the employee complains.  N.J.S.A. 34:19-7.

-14-

Here, Plaintiff has disclosed her complaints to her supervisors, including but not limited to Fire Captain Petrucelli and Deputy Chief Menendez. (Exhibit B at ¶ 25-26; 30), as determined by the chain of command.  Plaintiff complained about Petrucelli's sexist comments to defendant Mendendez. (Id. at ¶ 25) She also complained about the sexist comments to Petrucelli, at which time Petrucelli told Plaintiff that "females need to understand things are different in the firehouse" or words to that effect. (Id. at ¶ 26) Plaintiff also complained to Menendez on or about November 28, 2017, about  Petrucelli's retaliation since her complaint of discriminatory conduct. (Id. at ¶ 30) Plaintiff further contends that discovery will reveal that several other superiors were aware of Plaintiff's complaints as her complaints were forwarded and/or copied to other individuals, including the individual defendants, pursuant to the chain of command within the fire department, which is a para-military style organization that requires strict adherence to the chain of command.

Plaintiff also complained to Menendez about Petrucelli's comments and conduct regarding Plaintiff's military leave, which she reasonably believed was discriminatory in violation of  USERRA. (Id. at ¶ 34) Plaintiff has also filed grievances with the union regarding the discriminatory conduct.  (Id. at ¶ 43) Plaintiff even made an appointment to speak with Human Resources about the hostile work environment resulting from the discriminatory comments and Defendant's retaliatory conduct, but Defendants refused to permit Plaintiff to keep her appointment. (Id. at ¶ 44) Thus, Plaintiff has satisfied the second element of a valid CEPA claim.

### 3. Retaliatory or Adverse Employment Action

To satisfy the third element of a CEPA claim, a plaintiff must demonstrate proof of

retaliatory action by an employer. A retaliatory action is "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." N.J.S.A. 34:19-2e.

In the instant matter, Plaintiff asserts that defendants retaliated against her for CEPA-protected conduct. First, Defendants retaliated against Plaintiff when she was ordered by Petrucelli to write a "489" regarding a fire Plaintiff had never been dispatched to, on or about November 24, 2017, which was a form of discipline. (Exhibit B at ¶ 29) Plaintiff also contends that as a result of her protected conduct under CEPA, Plaintiff has been subjected to retaliation and a hostile work environment by defendants, which has consisted of but is not limited to the following:

a.  Denial of training approvals and offers of training opportunities including but not limited to the Crisis Intervention Team Training, and Hazmat Training;

b.  Imposition of and order of discipline including but not limited to the completion of 489 forms, while other members of Plaintiff's unit were not subject to the same discipline;

c.  Removal of Plaintiff's gun;

d.  Refusal to grant military leave after the submission of Military Orders in a timely fashion.

e.  Transfer of  Plaintiff from the Arson unit to Engine Co. 6 on the pretext Plaintiff did not have Hazmat Training when others were permitted to remain in the unit without the training;

f.  Denial of overtime unlike similarly situated arson investigators;

-16-

g.  Failure to pay overtime;

h.  Issuance of disciplinary notice issued by defendant McGill;

I.  Change in unit assignment of days scheduled to work;

j.  Denial of Plaintiff's request to go to the gun range.  (Id. at ¶ 31)

Defendant has also retaliated against Plaintiff by imposing new regulations on Plaintiff with regard to notice to be provided for military leave; failing to permit Plaintiff to attend Hazmat Training; disciplining Plaintiff for attending training; and transferring Plaintiff out of the Arson Unit to the firehouse.  (Id. at ¶ 35)

In January 2018, Menendez ordered Plaintiff to come in a day early from her "day off" due to military leave, and altered her work schedule in February and March so that her schedule had an adverse impact on her military service. (Id. at ¶ 36; 38).

Defendants have also subjected Plaintiff to gender based discrimination by permitting and/or condoning demeaning, hostile and derogatory remarks against females including defendant Petrucelli's use of the term  "baby back" which is a term ascribed to women who complain or cry a lot, or act like  a "pussy." (Id. at ¶ 51)  Defendants have also denied Plaintiff the opportunity to attend training programs and/or practice at the range, and have denied female firefighters access to the locker room, requiring them to change in an area designated for male and female firefighters. (Id. at ¶ 53; 54)

Plaintiff alleges in her Complaint that the above employment actions are directly related to Plaintiff's whistleblowing activities and affect the terms and conditions of her employment. Defendants argue that each of these actions, examined *individually*, are insufficient to prove actionable retaliation.  However, when taken as a whole and in context, Plaintiff's allegations

-17-

certainly "raise a reasonable expectation that discovery will reveal evidence of the necessary element." Fowler, 578 F.3d 203, 213 (3d Cir. 2009). Even without discovery, Plaintiff's assertions of denial and failure to pay overtime, changes in days scheduled to work, unwarranted discipline and denial of training opportunities, certainly sets forth sufficient facts that Plaintiff's compensation or rank and opportunities for promotion have been affected by Defendant's wrongful conduct.

Further, despite Defendant's arguments that Plaintiff's "naked assertions devoid of any factual enhancement" (Db. Page. 15) are insufficient to establish the necessary elements of a CEPA claim, Plaintiff "is not required, at this early pleading stage, to go into particulars[.]" Fowler, 578 F.3d at 213, although Plaintiff respectfully submits that she has. Plaintiff "need only set forth sufficient facts to support plausible claims." Fowler, 578 F.3d 203, 212 (3d Cir. 2009). In addition, any accusations that Plaintiff has not established a *prima facie* claim on any of her allegations is premature and suggests the incorrect standard for the court to follow. Thus, Plaintiff has satisfied the third element of her CEPA claim.

### 4. Causal Connection Between Protected Activity and Employer Action

The final element of a CEPA claim requires an employee to establish that "a causal connection exists between the whistleblowing activity and the adverse employment action." Dzwonar, 177 N.J. at 462. Causation can be proved in one of two ways: (1) direct evidence of retaliation; or (2) circumstantial evidence that justifies an inference of retaliation. Zaffuto v. Wal-Mart Stores, Inc., 130 Fed. Appx. 566 (3d Cir. 2005); Estate of Roach v. TRW, Inc., 164 N.J. 598, 612, 754 A.2d 544, 551 (2000) (a causal connection may be inferred based on the surrounding circumstances).

-18-

An important factor in determining whether a causal relationship exists is whether the decision-maker knew of the alleged whistleblowing activity. That is certainly the case here. New Jersey acknowledges that the decision-maker's lack of knowledge casts doubt on whether the whistleblowing could have been a substantial or motivating factor in the employer's decision to take adverse action against the plaintiff. Thomas v. Town of Hammonton, 351 F.3d 103, 114 (3d Cir. 2003). Temporal proximity between the whistleblowing activity and the adverse employment action is another factor considered. Crane v. Yurick, 287 F.Supp. 2d 553 (D.N.J. 2003). There is a very close temporal proximity in the instant matter. It is certainly the case here that Defendants were aware of Plaintiff's whistleblowing activities as Plaintiff complained directly to Petrucelli and Menendez shortly before she was retaliated against.

Further, Plaintiff's Complaint specifically alleges how each individual defendant acted as an official who controlled Plaintiff's workplace. (Exhibit B at ¶ 5-10; 93-98) Although Defendant attempts to limit Plaintiff's claims that she suffered adverse employment actions to the conduct of Petrucelli and Menendez, Plaintiff asserts that individual defendants Steven McGill, the Chief of the Fire Department; James Shea, the Director of Public Safety for the City of Jersey City; Gerome Cala, the Deputy Director of the Department of Fire and Emergency Services; and/or Mark Bunbury, the Director of Human Resources; *each* had the authority to control the Plaintiff's work place and thus participate and/or partake in the decisions to retaliate against Plaintiff as identified above. Without the benefit of any discovery to further investigate their involvement in the adverse employment actions described by Plaintiff, dismissal of these individuals at this time would be premature.

Accordingly, the First Amended Complaint plausibly suggests that Plaintiff has been

subject to adverse employment actions due to her whistleblowing activity, and Defendant's

Motion to Dismiss Plaintiff's CEPA claim against all Defendants should be denied.

**III. Defendant's Motion to Dismiss Should be Denied As Plaintiff Has Sufficiently Pled A Valid Gender Discrimination Claim Against All Defendants**

The New Jersey LAD prohibits discrimination based on an individual's "…race, creed,

color, national origin, ancestry, age, sex… marital status…" N.J.S.A. 10:5-1 et. seq. "As

remedial legislation, the Law Against Discrimination should be construed with a high degree of

liberality which comports with the preeminent social significance of its purposes and objects."

Andersen v. Exxon Co., U.S.A., 89 N.J. 483, 494 (1982) (quoting Passaic Daily News v. Blair,

63 N.J. 474, 484 (1973)); Franek v. Tomahawk Lake Resort, 333 N.J.Super. 206, 217, 754 A.2d

1237, 1243 (App.Div. 2000). The LAD seeks to ensure that individuals are distinguished based

on "…merit, rather than skin color, age, sex or gender, or any other measure that obscures a

person's individual humanity and worth." Tynan v. Vicinage 13 of Superior Court, 798 A.2d

648, 656, 351 N.J.Super. 385 (App. Div. 2002), citing Enriquez v. W. Jersey Health Sys., 342

N.J.Super. 501, 527, 777 A.2d 365 (App. Div. ) cert. denied, 170 N.J. 211, 785 A.2d 439 (2001).

The Court has also stressed the goal of the LAD which has been "nothing less than the

eradication of the cancer of discrimination." Fucilla v. Layman, 109 N.J. 319, 334, 537 A.2d 652

(1988) (quoting Jackson v. Concord Ins. Co., 54 N.J. 113, 124, 253 A.2d 793 (1969).

Sex and/or Gender discrimination is "a form of targeted discrimination". Pukowsky v.

Caruso, 312 N.J. Super. 171, 177 (App. Div. 1998). In cases of claims of gender discrimination,

the New Jersey Supreme Court has noted that such discrimination is "peculiarly repugnant in a

society which prides itself on judging each individual by his or her merits." Grigoletti v. Ortho

Pharmaceutical Corp., 118 N.J. 89, 570 A.2d 903, 906 (1990); Peper v. Princeton Univ., 77 N.J. 55, 80, 389 A.2d 465 (1978).

To establish a claim of discriminatory treatment in terms, conditions, or privileges of employment, Plaintiff must establish that:

a.     The plaintiff is a member of a protected class; and

b.     The plaintiff was treated less favorably with respect to terms, conditions or other privilege than workers who were similarly situated but who were not a member of the protected class. NJ Model Jury Charge (Civil) 2.21 "The New Jersey Law Against Discrimination ("NJLAD") (*N.J.S.A.* 10:5-1 *et seq.*)"

Here, Plaintiff alleges that in whole or in part due to her protected class, which is female, she has been subject to discriminatory remarks and conduct which a reasonable woman would find to be offensive, and adverse employment actions as described above. Plaintiff claims that she has been denied the opportunity to attend training programs and/or practice at the range. (Exhibit B at ¶49; 53) Plaintiff specifically alleges that she has been subjected to demeaning, hostile and derogatory remarks against females including defendant Petrucelli's use of the term "baby back" which is a term ascribed to women who complain or cry a lot, or act like a "pussy", and statements by defendant Petrucelli that "females need to understand things are different in the firehouse" or words to that effect, which is a sexist and derogatory remark.. (Id. at ¶51.) Plaintiff further alleges that female firefighters have been denied access to the locker room, requiring them to change in an area designated for male and female firefighters. (Id. at ¶ 54) Thus, Plaintiff has properly pled that she is a member of a protected class, which is female, and that she was treated less favorably than workers who are *not* female.

-21-

Plaintiff further contends that the City of Jersey, Jersey City Fire Department, the Department of Public Safety, and individual defendants Menendez, Shea, McGill, Cala and/or Bunbury have failed to investigate and or address Plaintiff's complaints of discriminatory treatment in the workplace and have perpetuated an environment of bias and discrimination against females within the Fire Department employees. (Id. at ¶ 52) Accordingly, Defendant's Motion to Dismiss Plaintiff's NJLAD Gender Discrimination Claim should be denied.

### IV. Defendant's Motion to Dismiss Should be Denied As Plaintiff Has Sufficiently Pled A Valid USERRA/NJLAD Discrimination Claim Against All Defendants

In the case at bar, Plaintiff claims that she has been targeted, discriminated against, and denied a "benefit of employment" in violation of the USERRA and NJLAD statutes, at the Jersey City Fire Department, due in whole or in part to her military service. Plaintiff alleges that Defendants have attempted to interfere with Plaintiff's ability to serve in the Army National Guard and discriminated against the Plaintiff based on her service in the armed forces with derogatory comments about the military; scheduling events which interfere with Plaintiff's military orders; and prohibiting Plaintiff from participating in training. (Exhibit B at ¶ 65).  On January 8, 2018, defendant Menendez ordered plaintiff to report to work a day early from due to her day off from military leave, in violation of USERRA. (Id. at ¶ 66) Plaintiff was penalized due to her military training obligations when, on or about April 17, 2018, Defendant Menendez advised Plaintiff that he had been told by McGill that they would be charging Plaintiff with conduct unbecoming a firefighter based on Plaintiff's attendance at one JCFD mandatory training session, instead of two sessions, due to her military training obligations. (Id. at ¶ 68) Then, on or about April 18, 2018, Menendez and McGill denied Plaintiff's request for military time off, and

-22-

indicated that Plaintiff would be charged compensatory time for said leave. (Id. at ¶ 70)

Defendant McGill and/or Menendez incorrectly advised that the Union contract required four (4)

days notice be provided for any time off for military leave. (Id. at ¶ 72)

Plaintiff has been subjected to remarks about her military status by her employer,

including comments by Petrucelli that Plaintiff was "lucky" to have unlimited leave, after she

submitted military leave papers. (Id. at ¶ 33).   Plaintiff reported this comment to individual

defendant, Menendez, and then was retaliated against and subject to a hostile work environment

including but not limited to imposing new regulations on Plaintiff with regard to notice to be

provided for military leave; failing to permit Plaintiff to attend Hazmat Training; disciplining

Plaintiff for attending training; transferring Plaintiff out of the Arson Unit to the firehouse.  (Id.

at ¶ 34-35)

Section 4311(a) of the USERRA statute provides that a service member shall not be

denied a "benefit of employment" because of his military service. 38 U.S.C.A. § 4311. The statue

defines the term "benefit"  liberally to include "any advantage, profit, [or] privilege...that accrues

by reason of an employment contract or agreement... including...the opportunity to select work

hours or location of employment".  Courts have interpreted this section to include undesirable

transfers, changes in duties, negative performance appraisals, and a workplace free from

harassment.

In Maxfield v. Cintas Corp. No. 2, 427 F.3d 544 (8th Cir. 2005), an army reservist claimed

that he was discriminatorily transferred and then discharged because of his military status.  The

8th Circuit adopted the 4th Circuits holding in Hill v. Michelin N. Am. Inc., 252 F.3d 307, 312 (4th

Cir. 2001), that an undesirable transfer could constitute the denial of a "benefit" of employment even if it did not result in a wage loss.

A company's withdrawal from an employee's bank account of an automatic deposit that was equal to the pay differential between the employee's salary and his military pay while on reserve duty, was found to constitute a denial of a "benefit of employment, in <u>Koehler v. PepsiAmericas,</u> 2006 WL 2035650 (S.D. Ohio July 18, 2006). (Unpublished).

In <u>Grosjean v. First Energy,</u>471 F. Supp. 878 (N.D. Ohio 2007), the court granted the plaintiff summary judgment where the plaintiff's employer did not dispute that plaintiff's poor performance evaluation denied plaintiff a "benefit of employment" because it negatively referenced plaintiff's military leave as a reason for the poor evaluation.  The court held that the negative evaluation was sufficient to create a genuine issue of material fact as to whether his subsequent poor evaluations and termination were motivated in part by his military activities.

In <u>Vickers v. City of Memphis</u>, 368 F.Supp.2d 842 (W.D. Tenn.2005), plaintiff complained that after returning from Iraq, he was called derogatory ethnic names, and subject to harassment and a hostile environment due to his military status.  The court rejected the defendant's argument that USERRA did not cover claims of harassment based on military service.  The court found that such conduct could constitute a "benefit of employment" under Section 4311(a), particularly where the employer had a policy which prohibited the conduct complained of by the plaintiff, and the conduct was sufficiently severe or pervasive to alter the conditions of employment and create a hostile environment.

In <u>Warren v. International Business Machines Corp.,</u> 358 F. Supp. 2d 301 (S.D.N.Y. 2005), the court denied summary judgment when it decided that a reasonable jury could find that

-24-

the plaintiff's military status in the reserve was a substantial or motivating factor in his

employer's decision to terminate him.  The court relied on evidence of discriminatory comments

about his periods of leave including but not limited to suggestions that the plaintiff try and get

out of taking the military leave.

The First Circuit reversed summary judgment for the employer in <u>Velazquez-Garcia v.</u>

<u>Horizon Lines of Puerto Rico, Inc.,</u> 473 F.3d 11 (1st Cir. 2007), where the plaintiff produced

evidence of remarks about his military status from co-workers, complaints by his supervisor

regarding his military schedule, and other such conduct which may be found to be motivated by

the plaintiff's military status.

Similar to <u>Warren v. International Business Machines Corp</u> and  <u>Velazquez-Garcia v.</u>

<u>Horizon Lines of Puerto Rico, Inc.,</u> Plaintiff in the instant matter has been subject to remarks

about her military status by her employer, including comments by Petrucelli that Plaintiff was

"lucky" to have unlimited leave (Exhibit B at ¶ 33).   Defendant has also denied plaintiff a

"benefit of employment" and failed to make reasonable efforts to help Plaintiff continue to be

qualified for the position of Arson Investigator in the Jersey City Fire Department, Arson

Investigation Unit, pursuant to 38 U.S.C. 4313(a)(4), when the date of the Hazmat Training

conflicted with Plaintiff's military service. (Id. at ¶ 73) Plaintiff was further denied benefits of

employment when Menendez and McGill denied Plaintiff's request for military time off, and

indicated that Plaintiff would be charged compensatory time for said leave. (Id. at ¶ 70)

Defendants further retaliated against Plaintiff when in January 2018, Menendez ordered

Plaintiff to come in a day early from her "day off" due to military leave, which is a violation of

USERRA.  (Id. at ¶ 36) Defendants further retaliated against Plaintiff on or about January 25,

2018, when Plaintiff's work schedule was changed so that her work schedule in February and March had an adverse impact on her military service. (Id. at ¶ 38)

On March 1, 2018, Defendants removed Plaintiff from the Arson Unit based on an alleged change in the qualifications required of an Arson Investigator which required the mandatory attendance at HazMat training scheduled during a period of time, which conflicted with Plaintiff's previously submitted military service. (Id. at ¶ 39) Defendants failed to provide Plaintiff with the opportunity to take the same course as the unit took, causing Plaintiff to be temporarily transferred Plaintiff back to Engine Co 6, while she waited to take the HazMat Tech Class, which was retaliatory. (Id. at ¶ 40) Defendants failed to make reasonable efforts to help Plaintiff continue to be qualified for the position of Arson Investigator, in the Jersey City Fire Department Arson Investigation Unit, pursuant to 38 U.S.C. 4313(a)(4). (Id. at ¶ 41)

Then, in April 2018, after Plaintiff requested time off for military leave to defendant Petrucelli, Defendant Menendez advised Plaintiff that he had been told by McGill that they would be charging Plaintiff with conduct unbecoming a firefighter based on Plaintiff's attendance at one JCFD mandatory training session, instead of two sessions, due to her military training obligations. (Id. at ¶ 68)  Shortly thereafter, on or about April 19, 2018, Defendant Menendez advised Plaintiff that the JCFD Administration decided to deny previously approved military leave, in violation of N.J.S.A. 38:23-1, N.J. S.A. 38A:4-4, and all applicable regulations or as otherwise provided under the law. (Id. at ¶ 62; 69)

On or about May 22, 2018, defendants Steven McGill, and/or Shea and/or Cala and/or Menendez ordered that Plaintiff be charged "compensatory time" for any military leave taken,

and incorrectly advised that the Union contract required four (4) days notice be provided for any time off for military leave. (Id. at ¶ 70)

Plaintiff has clearly alleged sufficient facts that her military status was a substantial or motivating reason for retaliatory and discriminatory conduct resulting in adverse employment decisions against Plaintiff in violation of USERRA and the NJLAD.  Plaintiff's allegations are not "naked" (Db page. 23)  nor "bare boned" (Db page. 24) as alleged by Defendant, but, when taken as a whole, support her claim that the foregoing conduct by Defendants reveals a concerted effort to retaliate against Plaintiff and disrupt Ms. Gross' career in the fire department and her career in the military in violation of the NJLAD and USERRA.

**V. Defendant's Motion to Dismiss Should be Denied As Plaintiff Has Sufficiently Pled A Valid NJLAD Hostile Work Environment Claim Against All Defendants**

Under the New Jersey Law Against Discrimination ("NJLAD"), it is unlawful "[f]or any person to take reprisals against any person because that person has opposed any practices or acts forbidden [by the LAD] or because that person has filed a complaint, testified or assisted in any proceedings [under the LAD]…" N.J.S.A. 10:5-12(d).  The New Jersey Supreme Court established that a hostile work environment violates the NJLAD when defendant's conduct:  (1) would not have occurred *but for* the employee's [disability, age]; and the conduct was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment are altered and the working environment is hostile and abusive. Taylor v. Metzger, 152 N.J. 490, 498 (1998); Lehmann v. Toys `R' Us., 132 N.J. 587, 603-604 (1993).

Plaintiff claims she was subject to harassment and/or retaliation creating a hostile environment because she complained of discriminatory conduct based on her military status, sex

and/or gender in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et.seq. Plaintiff asserts that the harassment and/or retaliation complained of by Plaintiff was severe or pervasive such that a reasonable person would believe that the conditions of his employment were altered and that the working environment was intimidating, hostile or abusive as expressed in the grievances filed, and/or communications Plaintiff had with her supervisors at the Division of Fire.

In contrast to Defendant's allegations that "Plaintiff has premised her hostile work environment case on two gender-related comments and one military-related comment," (Db. Page. 27), Plaintiff claims that the evidence will support the allegations in the First Amended Complaint that the individual defendants, Joseph Menendez, Mark Petrucelli, Steven McGill, James Shea, Gerome Cala and/or Mark Bunbury were engaged in harassing and retaliatory conduct because of Plaintiff's complaints of conduct that she reasonably believed was sexist and discriminatory.  This conduct included but was not limited to: Referring to Ms. Gross as a "baby back" and telling  Plaintiff that "females need to understand things are different in the firehouse;" and then retaliating against Plaintiff after she objected to such comments, including but not limited to the above-mentioned conduct. However, these are not the *only* harassing and discriminatory comments, as Defendant suggests.

In the Fourth Count of Plaintiff's First Amended Complaint, Plaintiff alleges that on or about April 17, 2018, Defendant Chief Steven McGill sent a letter to Colonel Petrera advising that Plaintiff was being subject to departmental charges which were false and only intended to further harass, retaliate against and discriminate against the Plaintiff. (Exhibit B,¶ 81) On or about April 17, 2018, Defendant Menendez advised Plaintiff that according to McGill, Plaintiff

-28-

was being charged with conduct unbecoming a firefighter based on her attendance at one JCFD mandatory training session, instead of two sessions, due to her military training obligations. (Id. at ¶ 82)  Shortly thereafter, on or about April 23, 2018, Menendez posted false charges against Plaintiff in the "General Order" book, which was visible to the entire department, causing Plaintiff harm, humiliation and embarrassment. (Id.  at ¶ 83)  Plaintiff has also been singled out by defendants Shea, McGill, Cala and/or Menendez when Plaintiff was ordered to prepare a 489 explaining why she had attended the required Arson Recertification Training, unlike others in Plaintiff's unit. (Id.  at ¶ 84) On or about May 22, 2018, defendants Steven McGill, and/or Shea and/or Cala and/or Menendez ordered that Plaintiff be charged "compensatory time" for any military leave taken, and incorrectly advised that the Union contract required four (4) days notice be provided for any time off for military leave .(Id.  at ¶ 85)

Defendants subjected Ms. Gross to further retaliatory conduct when in January 2018, Menendez ordered Plaintiff to make an appointment with Human Resources regarding her complaints against Petrucelli, at which time, Gross was identified by Human Resources as "... the one who filed a complaint against Captain Petrucelli." (Id.  at ¶ 37) On or about May 21, 2018, defendants advised Plaintiff that any complaints had to go to a City investigator who also performs work for the city to conduct Union hearings, EEO investigations, as well as, represent the City in other matters, creating a conflict of interest. (Id.  at ¶ 86)

Taken as a whole and in context, a reasonable jury *could* find that the above behavior was severe and/or pervasive. Defendant's attempt to limit Plaintiff's allegations of a hostile work environment to "isolated, infrequent and indeterminate comments" (Db. Page 28) is a mis-characterization of Plaintiff's complaint, and one that severely misrepresents the discriminatory

-29-

and/or retaliatory behavior alleged by Plaintiff.

In addition, the evidence will show that defendant City of Jersey City knew or should have known that such conduct as complained of through the filing of grievances, complaints and/or verbal communications with supervisors, was occurring in the workplace, and failed to take any effective measures to prevent said conduct and/or was negligent when it failed to take any steps to prevent the harassment from occurring.

As asserted previously, Plaintiff claims that each individual defendant acted as an official who controlled Plaintiff's workplace.  (Exhibit B, ¶ 5-10; 93-98)   Specifically, Plaintiff claims that individual defendants Menendez, Shea, McGill, Cala and/or Bunbury have failed to investigate and or address Plaintiff's complaints of discriminatory treatment in the workplace and have perpetuated an environment of bias and discrimination against females within the Fire Department employees. (Id. at ¶52) All are upper management employees of Jersey City and Plaintiff's superior officers in the chain of command, with the authority to manage, supervise and oversee the Plaintiff's work environment. (Id. at ¶93-99)

It is clear that Defendants have prematurely filed this Motion, without the benefit of ANY discovery. Plaintiff claims that the evidence will support her claim that the conduct she has described created a hostile environment and/or that she was retaliated against based on complaints of discriminatory treatment, which violated Plaintiff's rights in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et. seq.*  Therefore, the Fourth Count of the Plaintiff's First Amended Complaint should not be dismissed against any defendant at this time.

**VI. Defendant's Motion to Dismiss Should be Denied As Plaintiff Has Sufficiently Pled Aiding and Abetting Claims Against All Defendants**

The New Jersey Law Against Discrimination provides in relevant part, that it shall be an unlawful employment practice "[f]or *any person* to take reprisals against any person because that person has opposed any practices or acts forbidden under this act..." N.J.S.A. 10:5-12(d) (emphasis added).   This is broader than the ban on discrimination, which only which only applies to the "employer." <u>See</u> N.J.S.A. 10:5-12(a). As defined in the statute, "'person' *includes one or more individuals*, partnerships, associations, organizations, labor organizations, corporations, legal representatives, trustees, trustees in bankruptcy, receivers, and fiduciaries." N.J.S.A. 10:5-5(a) (emphasis added). Taken together, these provisions prohibit "any person" – a category that includes individuals – from engaging in acts of retaliation.

The statute also prohibits "*any person,* whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under the act, or to attempt to do so". N.J.S.A. 10:5-12(e) (emphasis added).

Plaintiff contends the clear intent of the Legislature in enacting the LAD in 1945, was to encourage the imposition of individual liability upon individual *wrongdoers,* be they supervisors, others who aid and abet, and those non-supervisory personnel who engage in discriminatory conducting or in creating a hostile work environment.  Non-supervisory personnel who participate in discriminatory conduct *aid and abet each other and the employer* in creating a hostile environment.

As a result, it has long been established in our State that individuals can be held individually liable under the LAD if they substantially assist in discriminatory and retaliatory

acts. <u>Shepherd v. Hunterdon Dev. Ctr.</u>, 336 N.J. Super. 395, 426 (App. Div. 2001), <u>aff'd in</u>

<u>relevant part</u>, 174 N.J. 1 (2002).

The New Jersey Supreme Court has explained "aiding and abetting". The Court has held

that in order to hold an employee liable as an aider or abettor, the plaintiff must show that "(1)

the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the

defendant must be generally aware of his role as part of an overall illegal or tortuous

activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and

substantially assist the principal violation.'" <u>Tarr v. Ciasulli's Mack Auto Mall</u>, 360 N.J.Super.

265, 882 A.2d 647 (App. Div. 2003), overturned in part, 181 N.J. 70, 84, 853 A.2d 921 (2004),

citing <u>Hurley v. Atlantic City Police Department</u>, 174 F.3d 95, 127 (3d Cir. 1999), <u>cert. denied</u>,

528 U.S. 1074, 120 S.Ct. 786, 145 L.Ed.2d 663 (2000).

More than one court has specifically ruled that an individual defendant can be held liable

under the NJLAD for his or her own wrongful conduct, even though that implies that the

individual was aiding and abetting himself or herself. In <u>Ivan v. County of Middlesex</u>, 595 F.

Supp. 2d 425 (D.N.J. 2009) the court explicitly held that "a supervisor may be liable for aiding

and abetting his or her own conduct." <u>Id.</u> at 462. Similarly, the Third Circuit held in <u>Hurley v.</u>

<u>Atlantic City Police Department</u>, 174 F.3d 95 (3d Cir. 1999), cert. denied, 528 U.S. 1074, 120

S.Ct. 786, 145 L.Ed.2d 663 (2000), that the NJLAD allows "an employer" as well as "a …

supervisor to be individually liable for aiding and abetting the actionable conduct of his

employer, when the challenged conduct is … the supervisor's own [violation of the statute]." <u>Id.</u>

at 126. The court further stated: "[A] supervisor, under New Jersey law, has a duty to act against

harassment. Taylor v. Metzger, 152 N.J. at 503. This duty can be violated by **deliberate indifference or affirmatively harassing acts.**  When a supervisor flouts this duty, he subjects himself and his employer to liability." 174 F.3d at 126.  (Emphasis Added).  In short, the individual defendant is held liable for aiding and abetting the employer (a separate party) in violation of the NJLAD.  See also, e.g., Baliko v. Stecker, 275 N.J. Super. 182, 191 (App. Div. 1994) (holding in NJLAD case against union that "[i]f one [union] member assists, supports, encourages, and supplements the efforts of another ..., ... individual members may be liable as aiders and abettors").

Furthermore, immunizing supervisors from individual liability for their own violations of the NJLAD would undermine New Jersey's "public policy to abolish discrimination in the work place."  Fuchilla v. Layman, 109 N.J. 319, 334 (1988).  Such immunity would irrationally hold a supervisor individually liable for merely encouraging another employee to violate the LAD, but not for his or her own violations of the statute; that makes no sense and creates a perverse incentive for the supervisor to step up his or her conduct from mere encouragement to affirmative wrongdoing.  Moreover, granting supervisors personal immunity for their own acts of discrimination while imposing liability on their employers for those acts would also ignore fundamental principles of agency law, which hold that both the principal *and the agent* are liable to third parties who are harmed by the agent's actions.  See, e.g., Davi v. Cabana Pools, Inc., 135 N.J. Super. 372, 378 (App. Div. 1975).

Defendant alleges that Plaintiff's Complaint should be dismissed against individual defendants Shea, Cala and Bunbury because it is an impermissible "shotgun" pleading. So-called "shotgun pleadings. . . fail to one degree or another, and in one way or another, to give the

-33-

defendants adequate notice of the claims against them and the grounds upon which each claim rests." Bartol v. Barrowclough, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017).

Here, Plaintiff has made sufficiently specific claims as to each individual's involvement in the wrong doing, and thus the claims against them. As previously argued within this brief, Plaintiff asserts that individual defendants Steven McGill, the Chief of the Fire Department; James Shea, the Director of Public Safety for the City of Jersey City; Gerome Cala, the Deputy Director of the Department of Fire and Emergency Services; and/or Mark Bunbury, the Director of Human Resources; *each* had the authority to control the Plaintiff's work place and thus participate and/or partake in the decisions to retaliate against Plaintiff as identified above. (Exhibit B, ¶ 5-10; 93-98)   Accordingly, these individuals cannot be "interchanged with any other City employee," as Defendant suggests.  Db. page 30.

Plaintiff alleges that each of the individual defendants were acting in their role as officials within the City of Jersey City, Division of Fire when, at the very least, they condoned the retaliatory actions taken by Menendez and Petrucelli, if they did not assist, support or encourage such actions. (Exhibit B, ¶ 102)  Further discovery is required to determine the level of knowledge and involvement of each of these individuals.

## VII . Dismissal Of Plaintiff's Complaint Against the Department of Public Safety And the Jersey City Division Of Fire

Plaintiff is not in a position to oppose Defendant's argument that Plaintiff's Complaint should be dismissed against the Department of Public Safety and the Jersey City Division of Fire. Plaintiff acknowledges that departments or sub-units of a municipal government cannot be sued in conjunction with municipalities because those departments are merely administrative arms of

-34-

the local municipality, not a separate judicial entity. *See* <u>DeBellis v. Kulp</u>, 166 F.Supp.2d 255,

264 (E.D.Pa.2001) (granting summary judgment to police department "because the department is

merely an administrative arm of the local municipality....") *See also* <u>Pahle v. Colebrookdale</u>

<u>Twp.</u>, 227 F. Supp. 2d 361, 367 (E.D. Pa. 2002) (*holding that* "[P]olice departments cannot be

sued in conjunction with municipalities, because the police departments are merely

administrative agencies of the municipalities—not separate judicial entities" *and dismissing the*

*department as* "a redundant party"); <u>Godley v. Newark Police Dep't</u>, No. CIV. 05-806 (SRC),

2007 WL 269815, at *3 (D.N.J. Jan. 26, 2007) (*holding* "police departments cannot be sued in

conjunction with municipalities because the police department is merely an administrative arm of

the local municipality, and is not a separate judicial entity.") Accordingly, Plaintiff's suit against

the City of Jersey City is proper and merges with the claims against the Department of Public

Safety and Division of Fire.

## VIII. Any Imperfection in Plaintiff's Pleading May Be Cured By Granting Leave to Amend the Complaint Any Imperfection in Plaintiffs Pleading May Be Cured By Granting Leave to Amend the Complaint.

To the extent that plaintiff's Complaint requires more detailed allegations that those

presented, FED. R. CIV. P. 15(a) provides that "leave shall be freely given when justice so

requires." <u>Shane v. Fauver</u>, 213 F.3d 113, 115 (3d Cir. 2000). As the <u>Shane</u> court observed

"[t]he Supreme Court has instructed that although 'the grant or denial of an opportunity to amend

is within the discretion of the District Court, ... outright refusal to grant the leave without any

justifying reason appearing for the denial is not an exercise of discretion;  it is merely an abuse of

that discretion and inconsistent with the spirit of the Federal Rules.' " *Id.* (citations omitted).

Despite the fact that plaintiff's Complaint is 20 pages long and includes over 106 paragraphs of factual allegations, should the Court be inclined to find the Complaint deficient in any way and grant defendants' motion in any respect, plaintiff respectfully requests leave to amend his Complaint.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss under FED. R. CIV. P. 12(b)(6) and allow Plaintiff's claims to proceed. In the alternative, Plaintiff respectfully requests leave to amend the Complaint to correct any imperfections identified by the Court.

Respectfully Submitted,
KRUMHOLZ DILLON, PA

By:

JENNA A. SHORR