Not for Publication

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

VANESSA GROSS,

*Plaintiff*,

v.

CITY OF JERSEY CITY, et al.,

*Defendants*.

Civil Action No. 18-9802

**OPINION**

**John Michael Vazquez, U.S.D.J.**

This case involves alleged employment discrimination and related claims. Presently before the Court is Defendants' joint motion to dismiss Plaintiff's first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). D.E. 10. Plaintiff Vanessa Gross ("Gross" or "Plaintiff") filed a brief in opposition (D.E. 13) to which Defendants replied (D.E. 14).[1] The Court reviewed the parties' submissions and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, Defendants' motion to dismiss is **GRANTED in part and DENIED in part**.

---

[1] Defendants' brief in support of their motion (D.E. 10-1) will be referred to as "Defs. Br."; Plaintiff's opposition (D.E. 13) will be referred to as "Plf. Opp."; and Defendants' reply (D.E. 14) will be referred to as "Defs. Reply."

I.   **FACTUAL[2] AND PROCEDURAL BACKGROUND**

This case involves allegations that Plaintiff, a female firefighter with the Jersey City Fire Department, was subjected to discriminatory comments and retaliation because of her gender, military status, and her whistleblowing activities. First Am. Compl. ("FAC") ¶¶ 6, 15, 24-25, 33. Specifically, Plaintiff, a member of the Arson Investigation Unit, maintains that Defendant Mark A. Petrucelli, the Fire Captain of the unit and Plaintiff's superior officer, made three separate discriminatory comments to Plaintiff that pertained to her gender and military status. After each discriminatory comment, Plaintiff complained to Defendant Joseph Menendez, the Deputy Chief of the Arson Investigation Unit. Following her complaints, Plaintiff alleges that Defendants have retaliated against her in a number of ways including disciplining her, failing to accommodate her military leave schedule, refusing her overtime pay and overtime opportunities, and temporarily transferring Plaintiff out of the Arson Investigation Unit. *See generally* FAC.

Plaintiff initially filed suit the Superior Court of New Jersey, asserting the following claims against all Defendants[3]: (1) violation of the New Jersey Conscientious Employee Protections Act, ("CEPA"), N.J.S.A. 34:19-2(b); (2) sex and/or gender discrimination pursuant to the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5-5(e); (3) military status discrimination pursuant to the Uniformed Services Employment and Reemployment Rights Act ("USERRA") and/or the LAD; (4) hostile work environment in violation of the LAD; and (5) aiding and abetting

---

[2] The factual background is taken from Plaintiff's First Amended Complaint (D.E. 3). When reviewing a motion to dismiss, a court accepts as true all well-pleaded facts in the Complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

[3] Defendants include the City of Jersey City ("Jersey City" or the "City); the Jersey City Division of Fire, Department of Public Safety; Menendez; Petrucelli; Steven J. McGill, the Chief of the Fire Department; James Shea, the Director of Public Safety; Gerome Cala, the Deputy Director of the Department of Fire and Emergency Services; and Mark Bunbury, the Director of Human Resources for Jersey City. FAC ¶¶ 3-11.

illegal discrimination. Defendants removed the matter to this Court on May 30, 2018, asserting federal question jurisdiction based on the USERRA claim. Notice of Removal ¶ 2, D.E. 1. Defendants filed the instant motion to dismiss on July 12, 2018. D.E. 10.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

3

### III. ANALYSIS

#### A. ENTITIES SUBJECT TO SUIT

In addition to asserting claims against a number of individuals, Plaintiff brings claims against Jersey City as well as the Division of Fire and the Department of Public Safety. FAC ¶¶ 3-4, 11. The Division of Fire (which is apparently part of the Department of Public Safety) and the Department of Public Safety (standing alone) are administrative arms of the City and are not separate entities. As a result, the Division of Fire and the Department of Public Safety are dismissed as Defendants in this matter.[4] *See, e.g., Streater v. City of Camden Fire Dept.*, 567 F. Supp. 2d 667, 674 n.5 (D.N.J. 2008) (explaining that fire departments "cannot be sued *in conjunction* with municipalities, because [ ] the department is merely an administrative arm of the local municipality").

#### B. USERRA CLAIM (Count Three)

Defendants argue that Plaintiff's USERRA claim must fail because she does not plead that she suffered an adverse employment decision as a result of her military status. Defs. Br. at 24. Plaintiff argues that her military status was a substantial and motivating reason for the retaliatory and discriminatory behavior, which resulted in adverse employment decisions. Plf. Opp. at 22-27.

The USERRA prohibits discrimination in employment on the basis of military service. 38 U.S.C. § 4311. Section 4311(a) provides that "[a] person who is a member of, . . . or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer

---

[4] In her opposition brief, Plaintiff concedes that the Division of Fire and the Department of Public Safety are not separate entities, therefore, cannot be sued in conjunction with the City. Plf. Opp. at 34-35.

4

on the basis of that membership, . . . or obligation." 38 U.S.C. § 4311(a). Further, the act provides that an employer

> shall be considered to have engaged in actions prohibited under subsection (a), if the person's membership, . . . or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, . . . or obligation for service.

38 U.S.C. § 4311(c)(1).

Courts apply the following "two-step burden shifting framework adapted from *NLRB v. Transportation Management Corp.*" when assessing a USERRA discrimination claim:

> [A]n employee making a USERRA claim of discrimination [ ] bear[s] the initial burden of showing by a preponderance of the evidence that the employee's military service was "a substantial or motivating factor" in the adverse employment action. If this requirement is met, the employer then has the opportunity to come forward with evidence to show, by a preponderance of the evidence, that the employer would have taken the adverse action anyway, for a valid reason.

*Carroll v. Del. River Port Auth.*, 843 F.3d 129, 131 (3d Cir. 2016) (quoting *Sheehan v. Dept. of Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001)). Military status is a motivating factor if the defendant "relied on, took into account, considered, or conditioned its decision on that consideration." *Murphy v. Radnor Township*, 542 F. App'x 173, 177 (3d Cir. 2013). Moreover, an adverse employment action under the USERRA is something that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Canete v. Barnabas Health Sys.*, 718 F. App'x 168, 169 (3d Cir. 2018) (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997)).

Among other things, Plaintiff alleges that she was disciplined because she missed a training due to her military obligations (FAC ¶ 68), charged compensatory time for military leave (*id.* ¶

73), and was temporarily removed from the Arson Investigation Unit when she missed a class as a result of her military commitments[5] (*id.* ¶ 73). If true, these are adverse employment actions because they alter Plaintiff's compensation, terms, and privileges of employment. *See Canete*, 718 F. App'x at 169. Moreover, Plaintiff alleges that they occurred in response to her military obligations. *See, e.g., id.* ¶ 65 As a result, Plaintiff sufficiently pleads a USERRA claim.

The USERRA, however, only applies to employers "or those individuals who have the power to hire or fire the employee." *Coulson v. Town of Kearny*, No. 07-5893, 2010 WL 331347, at *7 (D.N.J. Jan. 19, 2010) (quoting *Brooks v. Fiore*, No. 00-803, 2001 WL 1218448, at *9 n.3 (D. Del. Oct. 11, 2001)); *see also* 38 U.S.C. § 4303(4)(A)(i) (defining employer as "a person, institution, organization, or other entity to whom the employer has delegated the performance of employment-related responsibilities"). As pled, Plaintiff does not establish that any of the Individual Defendants had the ability to hire or fire her. As a result, Plaintiff's USERRA claim is dismissed as to the Individual Defendants.[6]

### C. NEW JERSEY LAW AGAINST DISCRIMATION CLAIMS

The LAD prohibits unlawful employment practices and discrimination by an employer. *Tarr v. Ciasulli*, 181 N.J. 70, 83 (N.J. 2004). An employer "includes one or more individuals,

---

[5] While not explicitly stated, there are sufficient allegations in the FAC for the Court to infer that Plaintiff's transfer out of the Arson Investigation Unit was an adverse employment act. The Court's assumption is based on allegations that Plaintiff joined the Arson Investigation Unit after she completed additional training following her general "firefighter programs." FAC ¶¶ 16-20.

[6] In Count Five, Plaintiff appears to assert aiding and abetting claims against the Individual Defendants pursuant to the USERRA. FAC ¶ 101. Plaintiff provides no legal support for this theory and the Court is not aware of any. *See Lopez-Arenas v. Zisa*, No. 10-2668, 2012 WL 933251, at *10 (D.N.J. Mar. 19, 2012) ("LAD provides essentially the same remedies as those available under USERRA; however, LAD holds individuals liable for their actions in aiding and abetting violations of an individual's rights rather than simply imputing general liability to the employer for the employees' acts."). Therefore, to the extent Plaintiff's aiding and abetting claims are premised on a USERRA violation, they are dismissed.

partnerships, associations, organizations, labor organizations, corporations, legal representatives, trustees in bankruptcy, receivers, and fiduciaries." N.J.S.A. 10:5-5(a), (e). The definition of employer does not include an individual supervisor. *Tarr*, 181 N.J. at 83. Here, Plaintiff explicitly states that her employer is Jersey City. FAC ¶ 49. Plaintiff does not plead that any of the Individual Defendants are her employer as defined by the LAD. As a result, Plaintiff's LAD claims (Counts Two, Three, and Four) are dismissed as to the Individual Defendants.

### 1. Gender Discrimination (Count Two)

Defendants argue that Plaintiff's gender discrimination LAD claim must be dismissed because Plaintiff fails to plead that she suffered an adverse employment action due to her gender. Defs. Br. at 16-17. The Court agrees. To state a LAD claim, a plaintiff must allege that she (1) is a member of a designated protected class; (2) was qualified for and performing the essential functions of the job; (3) suffered termination or adverse employment action; and (4) others not in the protected class did not suffer similar adverse employment decisions. *Victor v. State*, 203 N.J. 383, 408 (2010). For purposes of the LAD, "an adverse employment action is one which is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001); *see also Marrero v. Camden Cty. Bd. of Social Servs.*, 164 F. Supp. 2d 455, 473 (D.N.J. 2001) (stating that an adverse employment action "must affect adversely the terms, conditions, or privileges of the plaintiff's employment or limit, segregate or classify the plaintiff in a way which would tend to deprive her of employment opportunities or otherwise affect her status as an employee"). "Harassment alone is not enough." *Ivan v. County of Middlesex*, 595 F. Supp. 2d 425, 470 (D.N.J. 2009).

7

Here, Plaintiff alleges that because she is a woman, she has been subjected to discriminatory statements[7] (FAC ¶ 50), has been denied training and shooting range practice opportunities (*id.* ¶ 53), cannot use the locker room (*id.* ¶ 54), and that Defendants Menendez, Shea, McGill and/or Bunbury failed to investigate her complaints (*id.* ¶ 52). Plaintiff, however, fails to explain how these decisions have deprived her of employment opportunities or otherwise adversely impacted her status as a firefighter. Consequently, Plaintiff fails to state a gender discrimination claim under the LAD. Count Two is dismissed.

### 2. Military Service Discrimination (Count Three)

In addition to a violation under the USERRA, Count Three is also pled as a violation of the LAD. FAC ¶ 60. Membership in the armed forces is a protected class under the LAD. N.J.S.A. 10:5-12(a). Plaintiff alleges that she was qualified for and was performing the job of an Arson Investigator. FAC ¶ 20. And as discussed with respect to Plaintiff's USERRA claim, Plaintiff adequately alleges that she suffered adverse employment action as a result of her military status. Plaintiff also pleads that firefighters who were not in the military did not suffer similar adverse employment actions. *Id.* ¶¶ 40, 42. Therefore, Plaintiff states a LAD discrimination claim based on her military status.

---

[7] Plaintiff alleges, among other things, that Petrucelli referred to her as a "'baby back' which is a sexist, discriminatory and derogatory term ascribed to women who complain or cry a lot, or act like a 'pussy.'" FAC ¶ 24. Defendants repeatedly argue that "baby back" is not a gender related term. *See, e.g.*, Defs. Br. at 8-9. The Court is not familiar with this term vis-à-vis a derogatory expression. But at the motion to dismiss stage, the Court must accept Plaintiff's well-pleaded facts as true. As a result, the Court assumes at this stage that "baby back" is a gender-related derogatory term. Plaintiff also alleges that Petrucelli told her that "'females need to understand things are different in the firehouse' or words to that effect." FAC ¶ 26.

8

### 3. Hostile Work Environment (Count Four)

Plaintiff also asserts a hostile work environment claim under the LAD that is premised on her gender and military status discrimination. To state a hostile work environment claim, a plaintiff must allege that there was conduct that a reasonable person would consider "sufficiently severe or pervasive to alter the conditions of employment and create an intimidating, hostile, or offensive working environment." *Schiavo v. Marina Dist. Dev. Co., LLC*, 442 N.J. Super. 346, 368 (App. Div. 2015) (quoting *Lehmann v. Toys 'R' Us, Inc.*, 132 N.J. 587, 603-04 (1993)). A plaintiff must also allege that the conduct would not have occurred but for her protected status. *Id.* When assessing the sufficiency of a hostile work environment claim, "[c]ourts must consider the frequency or severity of the conduct, whether the conduct was physically threatening or humiliating, or merely an offensive utterance and whether the conduct unreasonably interfered with plaintiff's work performance." *Rich v. State*, 294 F. Supp. 3d 266, 281 (D.N.J. 2018) (quoting *Jackson v. Gannett Co.*, No. 08-6403, 2011 WL 3362154, at *5 (D.N.J. Aug. 3, 2011)). Thus, severe or pervasive conduct may be established through "numerous incidents that, if considered individually, would be insufficiently severe to state a claim, but considered together are sufficiently pervasive to make the work environment intimidating or hostile." *Lehmann*, 132 N.J. at 607. However, "the LAD is not intended to be a general civility code for conduct in the workplace . . . . Thus simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Mandel v. UBS/PaineWebber, Inc.*, 373 N.J. Super. 55, 73 (App. Div. 2004) (quoting *Heitzman v. Monmouth County*, 321 N.J. Super. 133, 147 (App. Div. 1999) (internal quotations omitted).

Plaintiff's gender discrimination hostile work environment claim is premised on the following: (1) Petrucelli referring to her as a "baby back"; (2) Petrucelli's statement that "females

need to understand things are different in the firehouse" or words to that effect; (3) the inability to attend training programs and/or practice at the range; and (4) denied access to the locker room. FAC ¶¶ 51-54. As discussed, giving Plaintiff the benefit of the doubt, the Court views "baby back" as a derogatory term. As for Petrucelli's second statement, it is reasonable to infer that this was also a negative remark based on gender. Plaintiff's remaining allegations, however, are not pled with specificity. There are no facts in the FAC explaining when or how many times Plaintiff was denied access to the shooting range or trainings, or who made the decision as to the denials. Moreover, although Plaintiff pleads that she could not use a locker room, she also states that she was given access to an area designated for male and female firefighters. The FAC fails at a fundamental level to explain which locker room she was denied access to or how this alleged deprivation was discriminatory. Moreover, the FAC does not explain when this occurred. Thus, Plaintiff's hostile work environment claim is essentially based on Petrucelli's two statements. But these statements are not enough to state a hostile work environment claim because the alleged conduct is neither severe nor pervasive. *See Cortes v. Univ. of Med. & Dentistry of N.J.*, 391 F. Supp. 2d 298, 308 (D.N.J. 2005) (explaining that incidents are pervasive "if they occur in concert or with regularity"); *Lehman*, 132 N.J. at 606-07 (stating that "it will be a rare and extreme case in which a single incident will be so severe that it would from the perspective of a reasonable woman, make the working environment hostile").

This is also the case for Plaintiff's military status hostile work environment claim. Plaintiff alleges that because of her military status she was disciplined for missing training because of her military obligations (FAC ¶¶ 82-84), required to take compensatory time for any military leave (*id.* ¶ 85), that Petrucelli made a derogatory comment that she was "lucky" to have unlimited leave (*id.* ¶¶ 51, 65), that new regulations regarding notice of leave were implemented (*id.* ¶ 35), that

she was denied access to trainings (*id.* ¶¶ 53-54, 65), and was temporarily removed from the Arson Investigation Unit (*id.* ¶ 35). As for Petrucelli's comment, Plaintiff states in a conclusory manner that this statement amounted to discrimination. FAC ¶ 75. But without more facts or context as to the statement, the Court cannot reasonably infer that Petrucelli's statement was made in a derogatory fashion. It is equally possible that such a statement was, as it states, an opinion that Plaintiff was fortunate to have more flexible leave. As for the remainder of Plaintiff's allegations regarding military-status discrimination, they do not amount of severe or pervasive conduct.

Accordingly, Plaintiff's hostile work environment claim is dismissed.

### 4. Aiding and Abetting (Count Five)

Plaintiff alleges that all of the Individual Defendants are liable for aiding and abetting Jersey City's violations of the LAD. FAC ¶ 102. With respect to the LAD, "individual liability of a supervisor for acts of discrimination or for creating or maintaining a hostile environment can only arise through the aiding and abetting mechanism." *Cicchetti v. Morris Cty. Sheriff's Office*, 194 N.J. 563, 594 (2008). Pursuant to N.J.S.A. 10:5-12(e), it is unlawful "[f]or any person, whether an employer or employee . . . to aid, abet, incite, compel or coerce any of the acts forbidden under [the LAD]." To conclude that an individual person is liable under an aiding and abetting theory there must be "active and purposeful conduct." *Tarr*, 181 N.J. at 83. Specifically,

> a plaintiff must show that (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation.

*Id.* at 84 (quoting *Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 127 (3d Cir. 1999)) (internal quotations marks and brackets omitted).

11

Plaintiff asserts claims against Shea, the Director of Public Safety; Cala, the Deputy Director of the Department of Fire and Emergency Services; and Bunbury, the Director of Human Resources for Jersey City. FAC ¶¶ 8-10. Defendants contend that the allegations against these Defendants are conclusory, and that Plaintiff fails to allege that they were involved in the discriminatory conduct or were even aware that it occurred. As a result, Defendants seek to dismiss the claims against these Defendants as impermissible group pleading. Defs. Br. at 29-30. Plaintiff counters that these Defendants had "the authority to control the Plaintiff's work place and thus participate[d] . . . in the decisions to retaliate against Plaintiff." Plf. Opp. at 34. Given the allegations in the FAC, Plaintiff fails to state an aiding and abetting claim against these Defendants. Outside of conclusory allegations, Plaintiff does not sufficiently allege that these Defendants were aware of the alleged wrongful conduct. Accordingly, Plaintiff's aiding and abetting claim is dismissed as to Shea, Cala, and Bunbury.

Defendants also seek to dismiss the aiding and abetting claim with respect to gender-based discrimination as to McGill (Defs. Br. at 30) and the gender discrimination hostile workplace claim as to Menendez (Defs. Br. at 25). The Court agrees, although for a reason other than as argued by Defendants. "[A]n individual employee can not be found liable for discrimination under NJLAD unless the employer is first found liable." *Hanani v. New Jersey*, No. 03-3111, 2005 WL 1308231, at *16 (D.N.J. May 31, 2005) (citing *Failla v. City of Passaic*, 146 F.3d 149, 158 (3d Cir. 1998)). Because Plaintiff's gender-based LAD claims are dismissed, Plaintiff's gender-based aiding and abetting claims must also be dismissed.

Finally, Defendants argue that the military-based aiding and abetting claim should be dismissed as to Petrucelli because none of the military status allegations involve him. Defs. Br. at 22. The Court agrees. As noted, the Court finds that Plaintiff has not plausibly set forth a hostile

work environment claim vis-à-vis her military status. As a result, the aiding and abetting claim also fails.

However, Plaintiff's aiding and abetting claim survives as to Petrucelli, Menendez and McGill for conduct that pertains to military-status discrimination (other than the hostile work environment) under the LAD.

### D. CEPA CLAIM (Count One)

CEPA, N.J.S.A. 34:19-1, *et seq.*, permits a whistleblowing employee to bring suit against an employer[8] that retaliated against her through an adverse employment action. *Winters v. N. Hudson Reg'l Fire & Rescue*, 212 N.J. 67, 89 (2012). "[T]he framework for proving a CEPA claim follows that of a LAD claim." *Ivan*, 595 F. Supp. 2d at 466. Thus, the employee carries the initial burden of establishing a *prima facie* case of retaliation. To establish a *prima facie* case under CEPA, a plaintiff must show that (1) she reasonably believed that her employer's conduct was violating a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) she performed a "whistleblowing" activity; (3) an adverse employment action was taken against her; and (4) there is a causal connection between the whistleblowing activity and the adverse employment action. *Dzwonar v. McDevitt*, 177 N.J. 451, 462 (2003).

In seeking dismissal of the CEPA claim, Defendants first argue that Plaintiff fails to demonstrate an objectively reasonable belief that a violation occurred. Defs. Br. at 8. A plaintiff does not need to show that her employer actually violated a law or a clear mandate of public policy to state a CEPA claim. *Dzwonar*, 177 N.J. at 462. Rather, an employee must "show that his belief

---

[8] An employer under CEPA includes "any individual, partnership, association, corporation or any person acting directly or indirectly on behalf of or in the interest of an employer with the employer's consent." N.J.S.A. 34:19-2(a); *see also Ivan*, 595 F. Supp. 2d at 478. As a result, unlike USERRA, the Individual Defendants can be directly liable for the alleged discriminatory conduct.

13

that illegal conduct was occurring had an objectively *reasonable* basis in fact—in other words that, given the circumstantial evidence, a reasonable lay person would conclude that illegal activity was going on." *Young v. Schering Corp.*, 275 N.J. Super. 221, 233 (App. Div. 1994) (quoting *Littman v. Firestone Tire & Rubber Co.*, 709 F. Supp. 461, 470 (S.D.N.Y. 1989)). But if the employee's "belief, however sincere, was objectively unreasonable, his actions are not protected activity and his CEPA claim must fail." *Blackburn v. United Parcel Serv., Inc.*, 3 F. Supp. 2d 504, 515 (D.N.J. 1998).

Here, Plaintiff's CEPA claim is premised on two alleged violations of law. Plaintiff contends that she suffered from retaliation after reporting Petrucelli's gender-based discrimination comments to Menendez that purportedly violated the LAD. FAC ¶¶ 24-31. Plaintiff also maintains that she suffered from retaliation after reporting Petrucelli's military-status based comments to Menendez in violation of the USERRA and the LAD. *Id.* ¶¶ 33-35. As for Plaintiff's complaints regarding Petrucelli's gender-based comments, while they are not sufficient as pled to support a hostile work environment claim, they are sufficient to establish an objectively reasonable belief that a violation had occurred. This is not the case for Plaintiff's CEPA claim to the extent it is premised on Petrucelli's statement that she was lucky to have unlimited leave. As discussed, Plaintiff's statement that this comment was derogatory is conclusory; it is equally possible to interpret the remark in a non-discriminatory manner. Accordingly, it is objectively unreasonably to assume there was LAD or USERRA violation solely based on this single comment. Therefore, Plaintiff's CEPA claim is dismissed to the extent that it is premised on her complaints about Petrucelli's military status comments.

Defendants also reason that Plaintiff's CEPA claim must be dismissed because Plaintiff does not plead that she was subject to retaliatory action as a result of her whistleblowing activities.

14

"Retaliatory action" under CEPA is defined as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." N.J.S.A. 34:19-2(e). Employment actions that fall short of discharge, suspension or demotion "may nonetheless be the equivalent of an adverse action." *Nardello v. Township of Voorhees*, 377 N.J. Super. 428, 433-34 (App. Div. 2005). Moreover, adverse employment action can include "many separate but relatively minor instances of behavior directed against an employee that may not be actionable individually but that combine to make up a pattern of retaliatory conduct." *Green v. Jersey City Bd. of Educ.*, 177 N.J. 434, 448 (2003). To determine if there was retaliatory action, a court must consider "factors such as the employee's loss of status, a clouding of job responsibilities, diminution in authority, disadvantageous transfers or assignments, and toleration of harassment by other employees." *Mancini v. Township of Teaneck*, 349 N.J. Super. 527, 564 (App. Div. 2002).

Here, Plaintiff alleges that in retaliation for her whistleblowing activities, she was, among other things, denied training opportunities, subject to discipline, her military leave was not granted in a timely fashion, she was temporarily transferred out of the Arson Investigation Unit, her work schedule changed, her gun was taken away and she was denied the opportunity to go to the gun range, and that she was not paid overtime. FAC ¶¶ 31-32. When viewed together, these acts sufficiently allege improper retaliatory conduct. Moreover, the Court has already concluded that Plaintiff sufficiently alleged adverse employment actions at the motion to dismiss stage by pleading that she was denied of overtime and transferred out of the Arson Investigation Unit.

Next, Defendants argue that Plaintiff fails to allege that the retaliatory conduct was causally connected to her whistleblowing activities. Defs. Br. at 11-15. To determine whether a causal connection exists, a plaintiff must allege facts "such that the court can infer that if the employer's

actions remain unexplained, it is more likely than not that such actions were based on impermissible reasons." *Bowles v. City of Camden*, 993 F. Supp. 255, 264-65 (D.N.J. 1998). A causal connection "can be satisfied by inferences that the trier of fact may reasonably draw based on circumstances surrounding the employment action," which may include temporal proximity. *Maimone v. City of Atlantic City*, 188 N.J. 221, 287 (2006). Plaintiff alleges in the FAC that within an approximately seven-month period she was forced to incur numerous retaliatory actions from supervisors who were aware of her whistleblowing activities. These allegations are enough to plead that a causal connection existed at the motion to dismiss stage. *See, e.g., Rickerson v. Pinnacle Foods, Inc.*, No. 17-4469, 2017 WL 6034147, at *3 (D.N.J. Dec. 6, 2017) (concluding that the plaintiff showed a sufficient causal connection where there was a two-month gap between the plaintiff's complaint and firing).

Finally, Defendants argue that the CEPA claim should be dismissed as to Shea, Cala, Bunbury and McGill because Plaintiff fails to assert any CEPA-related allegations as to them. Defs. Br. at 7-8. The Court agrees. Plaintiff's CEPA claim involves comments that Petrucelli made to Plaintiff and that Plaintiff then reported to Menendez. Although Plaintiff alleges that she endured a number of retaliatory actions because of her whistleblowing activities, Plaintiff does not attribute any of the wrongful conduct to Shea, Cala, Bunbury or McGill in her CEPA claim. Thus, as pled, no other Defendant appears to have been involved in any conduct that pertains to Plaintiff's whistleblowing activities. As a result, Count One is dismissed as to Shea, Cala, Bunbury and McGill.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss (D.E. 10) is **GRANTED in part and DENIED in part**. The dismissal is without prejudice and Plaintiff is granted leave to

file an Amended Complaint. Plaintiff has thirty (30) days to file an Amended Complaint, if she so chooses, consistent with this Opinion. If Plaintiff fails to file an Amended Complaint, the dismissal will be with prejudice. An appropriate Order accompanies this Opinion.

Dated: May 15, 2019

                                                     _____
                                                     John Michael Vazquez, U.S.D.J.